NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

ZANE ZIVISKI, *Petitioner/Appellant*,

*v.*

JILLIAN COLLINS, *Respondent/Appellee*.

No. 1 CA-CV 19-0249 FC
FILED 2-25-2020

Appeal from the Superior Court in Maricopa County
No.  FC 2017-050910
The Honorable Adam D. Driggs, Judge

**AFFIRMED**

APPEARANCES

Zane Ziviski, Newhall, CA
*Petitioner/Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1        Zane Ziviski ("Father") appeals from the superior court's order denying his motion to modify legal decision-making, custody, parenting time, and child support. For the following reasons, we affirm.

## BACKGROUND

¶2        Father and Jillian Collins ("Mother") have four minor children ("the children"). The State alleged the children dependent as to Father and Mother. After the dependency matter, the juvenile court found placement with Mother was in the children's best interests. Nonetheless, the court ordered that: (1) Father and Mother share legal decision-making authority, and (2) Father have reasonable supervised parenting time. The juvenile court denied Mother's request to relocate, ordered her to comply with the relocation statute, referred the matter to the family court, and barred her from leaving Arizona until the family court addressed the issue.

¶3        Notwithstanding the juvenile court's order, Mother left Arizona with the children without seeking permission from the family court. Although the juvenile court ordered joint legal decision-making, Mother unilaterally withdrew the children from school. She did not notify Father before leaving or provide him with any information regarding the children's whereabouts thereafter.

¶4        Through his investigation, Father eventually located Mother and the children, and moved for a temporary order for modification of legal decision-making and custody. The family court denied Father's motion but appointed: (1) a legal advisor for the children, (2) a best-interests attorney to investigate the matter, and (3) a behavioral health professional to conduct a psychological assessment of Father.

¶5        Thereafter, Father petitioned to modify legal decision-making, custody, parenting time, and child support—requesting sole legal decision-making authority and physical custody of the children. He also

2

petitioned the family court to find Mother in contempt and moved for an award of the costs he incurred to enforce the juvenile court's parenting-time order. The family court held an evidentiary hearing on Father's petition for contempt, found Mother in contempt for violating the juvenile court's order not to relocate, and awarded Father the fees he incurred for supervised parenting time with the children.

¶6            In advance of a hearing on Father's petition to modify, the best-interests attorney filed a position statement, including the following findings and recommendations: (1) Mother does not recognize the importance of Father's relationship with the children and is unwilling to facilitate the relationship; and (2) "[a]ny expense" regarding parenting time should be borne by Mother because she left the state in violation of a court order, thereby creating a significant barrier to Father's court-ordered parenting time. The court-appointed psychologist submitted her psychological evaluation of Father, diagnosing him with "unspecified schizophrenia spectrum and other psychotic disorder" and recommending the use of psychotropic medication and individual therapy.

¶7            After holding an evidentiary hearing and reviewing the submitted reports, the family court found, among other things, that: (1) the children have enjoyed stability since relocating to Illinois and are thriving; and (2) Father has not demonstrated that he can provide a stable environment for the children because of his history of mental illness, homelessness, and drug use. Based on the evidence presented, the court ordered: (1) continued joint legal decision-making authority; (2) supervised parenting time for Father, with the parties splitting the costs associated with supervision; and (3) regular video or phone and email contact between Father and the children. The court also denied Mother's request for attorney fees and costs. Father timely appealed.

## DISCUSSION

¶8            We review a ruling on a petition to modify legal decision-making, custody, parenting time, and child support for an abuse of discretion. *See Christopher K. v. Markaa S.*, 233 Ariz. 297, 300, ¶ 15 (App. 2013). We will uphold the court's order if it is supported by substantial evidence. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

¶9            Here, Father does not contest the court's denial of his motion for sole legal decision-making authority and physical custody of the children. However, he raises several other challenges to the court's order.

¶10 First, Father contends the court's order for supervised parenting time is improper. He argues the juvenile court ordered supervised parenting time based solely on Mother's allegations of abuse and mental illness. Asserting Mother's allegations are wholly unsubstantiated, Father argues the order for continued supervision is erroneous.

¶11 While the court found "[n]o credible evidence" that Father had committed any act of domestic violence or child abuse, substantial evidence supports the court's finding that Father's mental health has been impaired, placing the children at risk while in his custody. As detailed in his psychological evaluation, Father self-reported that he was diagnosed as paranoid schizophrenic at age 20 and acknowledged several periods of homelessness and drug use. The evaluation also outlined Father's history of mental health treatment for various conditions, including paranoia and delusions. Moreover, based on her observations and tests, the court-appointed psychologist opined that Father had "symptoms consistent with a psychotic disorder" and recommended that he "participate in a psychiatric evaluation to assess the benefits of psychotropic medication on his current symptomatology."

¶12 Given this evidence, the court did not abuse its discretion by ordering supervised parenting time for Father. In making its determination, the court expressly noted that Father had failed to comply with the psychologist's recommendation to seek therapeutic treatment and have a psychiatric evaluation. The court noted that, had Father done so, the court would have been "in a better position to determine if unsupervised parenting was warranted and reasonable in light of Father's past mental health issues."[1]

---

[1] To the extent Father asserts that unspecified "mistakes" in the psychological evaluation call into question the court's parenting time ruling, the record reflects only that the psychological report contained two erroneous dates, which were corrected at Father's request. Contrary to Father's contention, these two typographical errors do not undermine the substance of the report. In addition, Father challenges the court's recitation of the court-appointed advisor's opinion testimony regarding the need for continuing supervision. As Father acknowledges, however, the appellate record does not contain transcripts of the advisor's testimony. We therefore presume that the advisor's testimony supports the court's factual findings and rulings. *See Kohler v. Kohler*, 211 Ariz. 106, 108, ¶ 8 n.1 (App. 2005).

¶13        Alternatively, Father argues that Mother should be ordered to pay all supervisor-related fees as an "even trade" for her violation of the juvenile court's order not to relocate and the corresponding obstruction of his court-ordered parenting time. But Mother's violation of the juvenile court's order not to relocate is unrelated to the grounds necessitating supervised parenting time.

¶14        Next, Father alleges that Mother was late in disclosing her pretrial statement. Although Father asserts that he did not receive Mother's pretrial statement until the day of the evidentiary hearing, the record reflects that Mother filed her statement months beforehand and sent a copy to Father's email address on the same date. Regardless, Father has not identified any prejudice from the alleged late disclosure.

¶15        Father also contends he needed more time at the evidentiary hearing to cross-examine witnesses and fully present his closing argument. He does not identify any evidence or argument that he was precluded from presenting, however, and in the absence of transcripts of the hearing, we cannot ascertain any prejudice. *See Kohler*, 211 Ariz. at 108, ¶ 8 n.1.

¶16        Finally, Father contends the court erred by failing to award him the costs he incurred enforcing the juvenile court's parenting time order. As set forth in A.R.S. § 25-414(C), court costs "incurred by the nonviolating parent associated with the review of noncompliance with a visitation or parenting time order shall be paid by the violating parent." In this case, the court found Mother in contempt for violating the juvenile court's order not to relocate and awarded Father the costs he had incurred for supervised parenting time, as of that date. Although Father contends he orally moved for another award of costs at the close of the evidentiary hearing, no such request is recorded in the corresponding minute entry, and no transcript of the hearing is included in the appellate record. While the court's ruling specifically denied Mother's request for attorney fees and costs, it does not reference any similar request from Father. In the absence of a transcript reflecting such a request, Father has not established that the superior court erred by failing to sua sponte make such an award. *See Kohler*, 211 Ariz. at 108, ¶ 8 n.1.

## CONCLUSION

¶17       For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA